UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULITA U. CAYLOR,

      Plaintiff,

v.                                  Case No:   3:13-cv-251-J-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on March 7, 2013. Plaintiff, Julita Caylor seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **affirmed** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2),

1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.  Procedural History

On January 14, 2005, Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of February 17, 2004.   Plaintiff's application was denied initially on May 17, 2005, and upon reconsideration on August 22, 2005.   A hearing was held before Administrative Law Judge John D. Thompson, Jr. ("ALJ") on June 13, 2007.   The ALJ issued an unfavorable decision on November 7, 2007. (Tr. p. 15-24).   On July 27, 2009, the Appeals Council denied Plaintiff's request for review. (Tr. p. 4-9).    The Plaintiff filed a civil action in the United States District Court, and the Honorable Thomas E. Morris, United States Magistrate Judged entered an Opinion and Order on September 28, 2010 which reversed and remanded the action to the Commissioner. (*See*, Case No. 3:09-cv-815-J-TEM, Doc. 24). Judge Morris remanded the action to the Commissioner to hold necessary proceedings and re-evaluate the demands of Plaintiff's past relevant work, and if the Commissioner determined that Plaintiff was unable to return to her past relevant work, then proceed to Step 5 and determine if Plaintiff is capable of performing other work that exists in the regional and national economy. (*See*, Case No. 3:09-cv-815-J-TEM, Doc. 24, p. 11).

Upon remand, on October 28, 2010, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings.   (Tr. p. 515). A second hearing was held before Administrative Law Judge John D. Thompson, Jr. ("ALJ") on August 9, 2011.   (Tr. p. 904-1000). Appearing at the hearing were Robert S. Karsh, a medical expert and Paul R. Dolan, a vocational expert. (Tr. p. 497). The ALJ issued an unfavorable decision on

November March 26, 2012. (Tr. p. 497-512).   The Decision of the ALJ became final after the Appeals Council denied a request for review.   (Tr. p. 477-480). The Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 7, 2013. (Doc. 1)   This case is now ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (Doc. 15).

In her Memorandum in Opposition (Doc. 24), Plaintiff stated the following:   "For the sake of brevity and economy, the statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (T. 494-512) are accepted by the Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, excepted, or expanded upon, below."   (Doc. 24, p. 4).   Therefore, the Court will also accept the testimony and medical evidence as set forth in the ALJ's Opinion unless specifically set forth otherwise.

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x[1] 89 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through June 30, 2009. (Tr. p. 499).   At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her onset date of February 17, 2004 through her date last insured of June 30, 2009. (Tr. p. 499).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: ischemic heart disease, diabetes mellitus, renal insufficiency, pulmonary insufficiency, gout, peripheral neuropathy, and obesity, citing 20 D.F.R. 404.1520(c).   (Tr. p. 499). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526. (Tr. p. 501).   At step 4, the ALJ determined that through the date last insured, the Plaintiff has the residual functional capacity ("RFC") to perform a range of light work. (Tr. p. 501).   The ALJ determined that Plaintiff could sit for a total of 6 hours in an 8-hour work day, stand for a total of 6 hours and walk for a total of 4 hours in an 8-hour work day.   (Tr. p. 501).   The ALJ decided that Plaintiff was able to lift/carry 20 pounds occasionally (up to 1/3 of the day) and 10 pounds or less more frequently. (Tr. p. 501).   The ALJ determined that Plaintiff could perform the following functions frequently but not constantly or continuously:   pushing/pulling of arm, hand or foot pedal controls.   (Tr. p. 501). The ALJ found Plaintiff could climb ramps or stairs occasionally, but was precluded from climbing ladders, ropes or scaffolds.   (Tr. p. 501-2).   The ALJ determined that Plaintiff could frequently balance, stoop, kneel, crouch or crawl and had no limitations in reaching, handling, fingering, or feeling from either a fine or gross dexterous standpoint.   (Tr. p.

502).   The ALJ found Plaintiff had no problems with hearing or vision, but should not work around unprotected heights or concentrated amounts of atmospheric pollutants and gave some credit to her pulmonary and respiratory difficulties including shortness of breath.   (Tr. p. 502). The ALJ determined that Plaintiff could return to her past relevant work as an electronic assembler, DOT # 726.684-018, and cottage parent, DOT# 187.167-186, because these jobs did not require the performance of work-related activities that were precluded by the claimant's residual functional capacity. (Tr. p. 511). The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from her alleged onset date of February 17, 2004, through her date last insured of June 30, 2009. (Doc. 512).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson,* 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

The Plaintiff raises two issues on appeal.   As stated by Plaintiff they are:

1)   The Administrative Law Judge erred by failing to find that the Plaintiff had the severe impairment of obstructive sleep apnea, at least for the period of time between her alleged onset date of February 17, 2004, and when she began using a CPAP machine; and

2)   The Administrative Law Judge erred by failing to properly evaluate and discuss the Plaintiff's complaints of daytime somnolence due to sleep disturbance at night due to the need to urinate.

## A. Whether ALJ erred in Failing to Find Obstructive Sleep Apnea a Severe Impairment

Plaintiff asserts that the ALJ erred in failing to find that Plaintiff had the severe impairment of obstructive sleep apnea at step 2 of the sequential evaluation. Plaintiff argues that in November 2006, after a polysomnography, Plaintiff was diagnosed with obstructive sleep apnea.   The first Decision by the ALJ on November 7, 2007, included a finding that Plaintiff's obstructive sleep apnea was a severe impairment, however in the ALJ's second Decision, he did not include obstructive sleep apnea as a severe impairment.   Plaintiff asserts that even though the ALJ found Plaintiff's obstructive sleep apnea condition palliated with the CPAP therapy, she still had that condition from her onset date in February 2004 until obtaining the CPAP in November 2006, and Plaintiff argues that the ALJ should have addressed whether Plaintiff's complaints prior to

November 2006 were credible.   Plaintiff asserts that the CPAP machine was helpful but did not eliminate Plaintiff's somnolence because she had to urinate frequently during the night.

The Commissioner responds that even if the ALJ should have included obstructive sleep apnea as a severe impairment at step 2, his error was harmless because the ALJ found other impairments to be severe, and discussed Plaintiff's obstructive sleep apnea in combination with all of her conditions in the Decision.   In the alternative, the Commissioner argues that Plaintiff's obstructive sleep apnea was not a severe impairment.

At step 2 of the ALJ's disability determination, the determination of severity is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r*

*of Soc. Sec.*, 550 F. App'x 850, 2013 WL 6840288, at *1 (11th Cir. Dec. 30, 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In the instant case, the ALJ determined that Plaintiff had the following severe impairments: ischemic heart disease, diabetes mellitus, renal insufficiency, pulmonary insufficiency, gout, peripheral neuropathy and obesity. (Tr. p. 499). The ALJ noted that Plaintiff uses a CPAP machine and had used the machine for 3 to 4 years.   (Tr. p. 504). The ALJ noted that Plaintiff underwent a sleep study on November 2, 2006, which revealed obstructive sleep apnea, however the condition was palliated with CPAP therapy.   (Tr. p. 506). The ALJ considered Plaintiff's testimony that she slept 4 hours per night, would go to the bathroom frequently, and would nap during the day.   (Tr. p. 505). The ALJ also stated that he considered all the Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Tr. p. 502).

Plaintiff asserts that the ALJ erred by not finding Plaintiff's untreated obstructive sleep apnea to be severe from her onset date of February 17, 2004 through the date she received   CPAP therapy in November 2006.   Plaintiff does not assert that the obstructive sleep apnea was not palliated by CPAP therapy.   Even if the ALJ erred by not stating that Plaintiff's obstructive sleep apnea from her onset date to November 2006 was severe, the ALJ found other impairments to be severe and considered the evidence surrounding Plaintiff's obstructive sleep apnea later in his Decision.   The ALJ noted that Plaintiff underwent a sleep study in November 2, 2006 and the CPAP therapy palliated her obstructive sleep apnea.   He considered Plaintiff's obstructive sleep apnea in combination with her other impairments. Therefore, even if the ALJ may have erred in not listing obstructive sleep apnea as a severe impairment at step 2 of the sequential evaluation,

the error was harmless because he considered Plaintiff's obstructive sleep apnea in combination with Plaintiff's other impairments.

In addition, Plaintiff failed to indicate how Plaintiff's diagnosis of obstructive sleep apnea in November 2006 would have limited Plaintiff's physical or mental abilities to do basic work activities from her onset date of February 17, 2004 through the date of her receiving CPAP therapy in November 2006. *See, Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). A diagnosis of a condition "is insufficient to establish that a condition cause[s] functional limitations." *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n. 6 (11th Cir. 2005)). The Plaintiff failed to provide support in the record that her condition during that limited time period resulted in work-related limitations. In fact, Plaintiff states to Dr. Camacho that she had been experiencing nonrestorative sleep issues for 3 to 5 years, which were occurring prior to her onset date of February 2004 while she was still employed. (Tr. p. 323). Therefore, the Court determines that even if the ALJ did err in failing to list Plaintiff's obstructive sleep apnea as a severe impairment at step 2, the error was harmless because the ALJ discussed Plaintiff's obstructive sleep apnea in combination with Plaintiff's other limitations, and the record fails to show that her obstructive sleep apnea from her onset date to November 2006 resulted in work-related limitations. Further, the Court does not find that the ALJ erred in failing to include Plaintiff's obstructive sleep apnea in a hypothetical question to the vocational expert because Plaintiff failed to show any work-related limitations from this diagnosis. The issues Plaintiff raised as to her daytime somnolence caused by frequent urination at night, will be discussed in the next section.

**B.  Whether ALJ Erred in Failing to Consider Complaints of Daytime Somnolence due to Sleep Disturbance Caused by Nocturia**

Plaintiff asserts that the ALJ erred by failing to properly evaluate Plaintiff's complaints of daytime somnolence and failed to properly evaluate Plaintiff's nocturia, or frequent nighttime urination. Plaintiff's argues that the ALJ failed to provide adequate reasons for questioning Plaintiff's credibility.   The Commissioner asserts that the ALJ properly considered Plaintiff's subjective complaints of daytime sleepiness and nocturia.   The Commissioner argues that there is minimal evidence to support these subjective complaints during the relevant time period prior to her date last insured of June 30, 2009, and an ALJ is not required to discuss every piece of evidence in the record or every subjective complaint.

Plaintiff testified at the hearing that she uses the bathroom approximately six times per night to urinate.   (Tr. p. 951). Plaintiff testified that she goes to sleep normally twice during the day (Tr. p. 961-62).   She testified she cannot sleep at night because she goes to the bathroom so many times.   (Tr. p. 961). The only mention of Plaintiff's nocturia in the medical records was on October 11, 2006, when Plaintiff related to Jorge R. Camacho, M.D. that she wakes up approximately two to three times during the night to go to the bathroom, and feels tired during the day.   (Tr. p. 353). As a result of Plaintiff's snoring and nonrestorative sleep, Dr. Camacho ordered the polysomnography and CPAP titration. (Tr. p. 354).   The records do not indicate that Plaintiff was treated for nocturia or mentioned it to any of her other doctors.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to

the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).   After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.   *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225.   "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).   The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:   "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In the instant case, Plaintiff testified at the hearing as to her nocturia and daytime somnolence.  The only mention in the medical records was Plaintiff reporting to Dr. Camacho that she used the bathroom two to three times per night and had some daytime somnolence.   At the time that Plaintiff reported these symptoms to Dr. Camacho, she had not been treated for her obstructive sleep apnea, and was not using CPAP therapy. Additionally, Plaintiff only reported in 2006 that she used the bathroom two to three times per night whereas at the time of the hearing, Plaintiff testified that she used the bathroom six times per night, however, the hearing was conducted in 2011 after the date last insured.

Plaintiff failed to provide any objective medical evidence confirming the severity of her alleged nocturia and daytime somnolence during the relevant period prior to June 30, 2009.   The ALJ acknowledged Plaintiff's testimony as to her nocturia and that she takes naps during the day. (Tr. p. 505).   The ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."   (Tr. p. 505). The Plaintiff failed to provide any objective medical evidence confirming the severity of her nocturia or her daytime somnolence or that any of her conditions can reasonably be expected to give rise to her claims. The ALJ went to great lengths in his second Decision discussing in great detail all of Plaintiff's impairments.   Substantial evidence supports the ALJ's findings as to Plaintiff's credibility concerning the intensity, persistence, and limiting effects of her symptoms. Therefore, the ALJ did not err in his evaluation of Plaintiff's complaints of daytime somnolence due to nocturia.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is supported by substantial evidence and decided according to proper legal standards.

### IT IS HEREBY ORDERED:

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).   The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 22, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties